IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05–cv–00026–EWN–PAC


ALPINE BANK, a Colorado banking corporation,

      Plaintiff,

v.

PLATT T. HUBBELL,
KELLEY S. HUBBELL, and
GEORGIA CHAMBERLAIN,
as Public Trustee of Garfield County, Colorado,

      Defendants and Third-Party Plaintiffs,

v.

CARNEY BROTHERS CONSTRUCTION,
a Colorado Corporation,
IAN CARNEY,
RICHARD CARNEY,
TEAMCORP, INC. d/b/a
DRAFT TEK, a Colorado corporation,
THANE R. LINCICOME,
T.J. CONCRETE CONSTRUCTION, INC.,
a Colorado corporation, and
KERRY M. KARNAN

      Third-Party Defendants.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

This is a breach of contract and deed foreclosure case. This matter is before the court on Plaintiff Alpine Bank's "Motion for Attorneys Fees," filed March 16, 2007. Jurisdiction is premised upon diversity pursuant to 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

The facts and procedural history of this case are fully set forth in my March 2, 2007, order granting summary judgment in favor of Plaintiff on its claim for enforcement of a promissory note (the "Note") executed by Defendants Platt T. Hubbell and Kelley S. Hubbell. (Order and Mem. of Decision [filed Mar. 2, 2007] [hereinafter "Order"].) Familiarity therewith is assumed. On March 16, 2007, Plaintiff filed a motion for attorneys fees based on the following provision of the Note:

> **ATTORNEYS FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that Amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit . . . .

(Mot. for Fees, Ex. 6 at 1 [Note] [emphasis in original] [filed Mar. 16, 2007] [hereinafter "Pl.'s Br."].) Plaintiff seeks a total of $188,459.79 in attorneys fees incurred by three different law firms in litigating the case at bar. (*Id.* at 3.) On April 5, 2007, the Hubells responded to Plaintiff's motion for fees. (Hubbells' Resp. in Opp'n to Alpine Bank's Mot. for Att'y Fees [filed Apr. 5, 2007] [hereinafter "Hubbells' Resp."].) The Hubbbells do not contest that, pursuant to the Note, Plaintiff is entitled to attorneys fees. (*See id.*) However, the Hubbells argue that the amount of fees Plaintiff seeks is unreasonable and should be reduced by $43,420.38. (*Id.*) On

April 24, 2007, Plaintiff replied in support of its motion. (Reply in Supp. of Pl.'s Mot. for Att'ys'

Fees [filed Apr. 24, 2007] [hereinafter "Pl.'s Reply"].) This issue is fully briefed.

## ANALYSIS

### 1.    *Legal Standard*

Colorado law permits the recovery of reasonable attorneys fees where provided for in

contract. *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. Ct. App. 2002). An award of attorneys

fees is appropriate in an action to enforce a promissory note when fees are explicitly provided for

in the note and the fees are reasonable and were actually incurred. *Karg v. Mitchek*, 983 P.2d 21,

27 (Colo. Ct. App. 1998); *accord Stevens v. Liberty Loan Corp.*, 421 P.2d 732, 734 (Colo.

1966). In determining whether a fee amount is reasonable, the court may consider:

> (1) whether the tasks being billed would normally be billed to a paying client, (2)
> the number of hours spent on each task, (3) the complexity of the case, (4) the
> number of reasonable strategies pursued, (5) the responses necessitated by the
> maneuvering of the other side, and (6) potential duplication in service by multiple
> lawyers.

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713

F.2d 546, 554 [10th Cir. 1983]) (quotation marks omitted). The party seeking attorneys fees

bears the burden of proving by a preponderance of the evidence its entitlement to the amount

sought. *Brighton Sch. Dist. 27 J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 336 (Colo. Ct.

App. 1996). "The prevailing party must make a good-faith effort to exclude from a fee request

hours that are excessive, redundant, or otherwise unnecessary." *Robinson*, 160 F.3d at 1281

(internal quotation marks omitted). "In sum, the district court must carefully scrutinize the total

number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys . . . ." *Ramos*, 713 F.3d at 554–55.

## 2.     *Evaluation of Claims*

At the outset, because the Hubbells do not contest the hourly rates sought by Plaintiffs, I deem them reasonable. *See Rodriguez v. Zavaras*, 22 F. Supp. 2d 1196, 1201–02 (D. Colo. 1998) ("As defendants have not objected, I deem those rates reasonable for services rendered . . . ."). The Hubbells do, however, contest the *number* of hours claimed by Plaintiff's counsel. (Hubbells' Resp.) Specifically, the Hubbells contend that Plaintiff's decision to utilize three separate law firms renders the fee request unreasonable because: (1) the multiple firms spent substantial time communicating with one another, which would have been unnecessary with the use of a single firm; and (2) lawyers from separate firms engaged in duplicative work.[1] (*Id.*) Further, the Hubbells argue that Plaintiff's counsel expended an unreasonable number of hours

---

[1]In their response, the Hubbells also contend they are entitled to a hearing regarding the reasonableness of the fee request should this court disagree with their objections. (Hubbells' Resp. at 15–16.) During a status conference, however, the Hubbells withdrew their request for a hearing. (*See* Courtroom Mins. [Nov. 1, 2007].)

oncertain tasks.  (*Id.*)  I address each of the Hubbells' arguments in turn.[2]  First, however, I

generally consider Plaintiff's decision to utilize the services of three law firms.

### a.    Three Law Firms

The Hubbells argue that Plaintiff lacked a valid reason for using three separate firms and

that the decision to do so inevitably led to duplication and inefficiency for which the Hubbells

should not be financially responsible.  (*Id.* at 2–3.)  Plaintiff counters that, considering the

complexity of case, the use of multiple firms was eminently reasonable.  (*See* Pl.'s Reply.)  I note

as an initial matter that "there is nothing inherently unreasonable about a client having multiple

attorneys."  *ACLU v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999) (quotation marks omitted); *see

also Ramos*, 713 F.2d at 554 (declining to "require an automatic reduction of reported hours to

adjust for multiple representation or potential duplication").  However, "the more lawyers

representing a side of the litigation, the greater the likelihood will be for duplication of services."

*Ramos*, 713 F.2d at 554.  As the Tenth Circuit has explained:

> Leading members of the profession have criticized the bar for the burgeoning
> expense of modern litigation and have attributed part of the problem to the
> practice of using several lawyers when one would suffice.  The court should assess
> the possibility that reported hours include duplication by reviewing with particular
> care the number of lawyers present at hearings, depositions, and other discovery
> proceedings, and by evaluating the roles played by the lawyers in the litigation
> generally.

---

[2]The Hubbells also suggests that the language of the Note allows Plaintiff to utilize only
one law firm.  (Hubbells' Resp. at 2.)  I need not address this issue, because the Hubbells do not
request that the fee award be limited to the contribution of a single law firm.  (*See* Hubbells'
Resp.)  Nonetheless, I find the Note's provision that, in the event of default, the Hubbells pay
"Lender's *attorneys'* fees" clearly allows Plaintiff to utilize multiple *attorneys.*  (Pl.'s Br., Ex. 6
[Note].)

*Id.* Counsel must justify the presence of more than two lawyers during trial and the presence of more than one lawyer at a deposition or hearing. *Id.* While this court recognizes "[t]he use in involved litigation of a team of attorneys who divide up the work is common today," an award for time spent by multiple firms and attorneys is only "proper [if] it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple lawyer litigation." *Johnson v. Univ. College of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983).

The instant case was brought by Plaintiff to enforce the Note against the Hubbells. (*See* Compl. for Foreclosure Pursuant to Rule 105 [Colo. R. Civ. P.] [filed Nov. 10, 2004].) The Hubbells, in turn, filed numerous counterclaims against Plaintiff, none of which survived summary judgment. (*See* Hubbells' Answer and Countercl. [filed Jan. 21, 2005]; Order.) The litigation between the parties has spanned over two years and involved hundreds of docket entries. Further, Plaintiff contends the case involved voluminous documents. (Pl.'s Reply. at 5.) By way of example, Plaintiff points to the Hubbells' initial disclosures, which totaled over 1,400 documents. (*Id.*)

Plaintiff employed eight attorneys and eight support staff from three different law firms to prosecute and defend against the Hubbells. (*See* Pl.'s Br., Exs. 1–5 [Att'y Affs. and Hrs.].) According to Plaintiff, each firm had a different task: (1) John M. Palmeri, of White & Steele, P.C., was charged with prosecuting the case against the Hubbells and addressing federal jurisdictional concerns; (2) Walter N. Houghtaling was charged with taking the lead in defending against the numerous counterclaims and affirmative defenses raised by the Hubbells against

Plaintiff; and (3) Robert B. Emerson, president of Robert B. Emerson, P.C., had served as counsel for Plaintiff for a long period of time and assisted Messrs. Houghtaling and Palmeri. (*Id.*, Exs. 1 [Palmeri Aff], 2 [Houghtaling Aff.], 3 [Emerson Aff.]; Pl.'s Reply at 4.) I find that although Plaintiff has adequately justified the distinct contribution of Messrs. Palmeri and Houghtaling, it has not adequately explained why the services of a third firm — that of Mr. Emerson — was necessary. While the court understands Plaintiff's desire to utilize its long-term counsel, the court cannot understand why Mr. Emerson could not have either taken up the role of prosecuting the Hubbells or defending against their counterclaims and affirmative defenses, rather than simply assisting two other law firms in doing so. Plaintiff offers no explanation to shed light on this conundrum. (*See* Pl.'s Br.; Pl.'s Reply.) If Mr. Emerson did not have the skills to perform one of the these tasks, certainly he could have been compensated for taking the time to find attorneys who possessed such skills, but the court can see no reason for him to have remained as a third firm assigned to the case without a specific purpose. For this reason, I shall pay particularly close attention to the reasonableness of the hours claimed by Mr. Emerson.

### b. Communication

The Hubbells argue that the amount of time spent communicating between the different law firms was unreasonable and reflects the inefficiency of using three separate firms. (Hubbells' Resp. at 3–11.) Plaintiff counters that "[i]t is axiomatic that communication and coordination of counsel is necessary where there is multiple representation of a single client." (Pl.'s Reply at 4.) While I agree with the maxim, as discussed above, Plaintiff has not given this court an adequate

explanation of its choice to utilize three, rather than two, firms for this case. Thus, I find Plaintiff

has failed to justify Mr. Emerson's need to communicate with attorneys from the other two firms.

Nevertheless, I will give Plaintiff the benefit of the doubt and assume Mr. Emerson's long-term

relationship with Plaintiff has allowed him to gain knowledge about Plaintiff that he was asked to

share with the other two law firms chosen to head up the instant litigation. This presumed

knowledge, however, is insufficient to justify ongoing, substantial involvement with the case

absent a specialized role. Thus, I reduce Plaintiff's fee request by seventy-five percent of the

amount of time Mr. Emerson spent communicating with other counsel and *vice versa*. I calculate

this total communication time to be 40.10 hours, for a total of $8,192.50 in fees.[3] (Pl.'s Br., Exs.

1–5 [Att'y Affs. and Hrs.]; Hubbells' Resp. at 4–11.) Seventy-five percent of this total is

$6,144.36, which is the amount by which I reduce Plaintiff's fees for communication with Mr.

Emerson.

### c.    *Duplication*

The Hubbells also argue that Plaintiff's utilization of multiple lawyers led to duplication of

efforts for the same tasks. (Hubbells' Resp. at 11–14.) As noted above, the Tenth Circuit has

held that counsel must justify the presence of more than one lawyer at a deposition or hearing.

*Ramos*, 713 F.2d at 554. Plaintiff has given no explanation for its choice to have more than one

---

[3]In several instances, Plaintiff's counsel list multiple tasks under one time block. When those time blocks include a one-on-one communication between Mr. Emerson and another lawyer, I assume the time block is evenly divided between the listed tasks. The exception to this practice is when the time lists "other" as a task. (*See* Pl.'s Br., Exs. 1–5 *passim* [Att'y Affs. and Hrs.].) Given counsels' lack of specificity in those instances, I presume the entire time spent doing "other" was actually spent communicating with Mr. Emerson.

lawyer present at depositions and hearings on several occasions, save that "attendance of more than one attorney at hearings and depositions is reasonable." (Pl.'s Reply at 5.) Plaintiff's conclusory statement of reasonableness cannot serve as justification. I, therefore, reduce Plaintiff's request for fees to the extent more than one attorney attended hearings and depositions. Additionally, I deduct for a June 9, 2006, entry in which lawyers Eldridge and Steinmetz performed the same task on the same day — reviewing Klebod documents and drafting disclosures regarding same. Due to the use of multiple attorneys performing the same tasks without sufficient explanation, I calculate Plaintiff's hours are to be reduced by 77.90 hours, or a total of $14,362.00.

> ### d.    *Reasonableness of Hours Spent on Certain Tasks*

Finally, the Hubbells argue Plaintiff's counsel spent an unreasonable amount of time reviewing documents from Plaintiff's underlying file (35.2 hours) and drafting the attorney suit report (35.8 hours). (Hubbells' Resp. at 14–15.) Regarding the underlying file, Plaintiff argues that this job involved reviewing voluminous documents relating to loans from First Bank and Plaintiff, engineering reports, soil reports, architectural reports, construction contracts, invoices and bills from the numerous contractors, depositions of architects and engineers, expert reports, and more. (Pl.'s Reply at 5.) Furthermore, this task was assigned to support staff and, thus, was billed at a significantly lower hourly rate than if an attorney had performed the task. (*Id.*) For these reasons, I find the time spent reviewing Plaintiff's file was reasonable.

Regarding the attorney suit report, Plaintiff explains:

> [T]he Attorney Suit Report [was] a lengthy [r]eport, detailing the facts, procedural history of the case, claims of the parties, probability of success on these claims, and prediction of expenses. This report required a detailed analysis of documents, law, and relevant facts. Moreover, production of this [r]eport is a necessary litigation expense because it not only assists in distributing costs and apprising the client as to the status of the litigation, but also assists in assessing settlement options.

(*Id.*)  Considering that this case involved multiple claims litigated over two years, the court finds counsels' devotion of significant time to analyzing and documenting the relevant facts and law of the case in order to apprise the client of the status of the litigation as well as assess likelihood of success was reasonable. Thus, I decline to reduce Plaintiff's requested hours for time spent on these tasks.

**3.    *Conclusion***

Based on the foregoing, Plaintiff shall be awarded attorneys fees in the amount of $167,948.43 ($188,454.79 minus $20,506.36). It is therefore ORDERED that:

1.    Plaintiff's motion for fees (#295) is GRANTED in part.

2.    The clerk shall forthwith enter judgment in favor of Plaintiff and against the Hubbells in the amount of $167,948.43.

Dated this 27th day of November, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge