**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 05-cv-00026-CMA-KLM

ALPINE BANK, a Colorado banking corporation,

      Plaintiff,

v.

PLATT T. HUBBELL,
KELLEY S. HUBBELL, and
GEORGIA CHAMBERLAIN, as Public Trustee at Garfield County, Colorado,

      Defendants/Third-Party Plaintiffs,

v.

CARNEY BROTHERS CONSTRUCTION, a Colorado corporation,
IAN CARNEY,
RICHARD CARNEY,
TEAMCORP, INC. d/b/a DRAFT TEK, a Colorado corporation,
THANE R. LINCICOME,
T.J. CONCRETE CONSTRUCTION, INC., a Colorado corporation, and
KERRY M. KARNAN,

      Third-Party Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND DEFENDANTS' MOTION TO REDUCE AMOUNT OF
JUDGMENTS OUTSTANDING PURSUANT TO FORECLOSURE SALE TO BANK**

---

This matter is before the Court on Plaintiff Alpine Bank's Motion for Attorneys'

Fees (Doc. # 446) and Defendants Platt T. Hubbell and Kelley S. Hubbell's[1] Motion to

---

      [1]  Ms. Hubbell has since changed her surname to Hogan.  However, for ease of
reference, the Court shall refer to her, in combination with Mr. Hubbell as "the Hubbells" or
"Defendants."

Reduce Amount of Judgments Outstanding Pursuant to Foreclosure Sale to Bank (Doc. # 465). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's and Defendants' Motions.

## I. BACKGROUND

This action concerns the default by Defendants/Third-Party Plaintiffs Platt T. Hubbell and Kelley S. Hubbell ("the Hubbells") on a construction loan the Hubbells executed on or about January 22, 2003.[2] The Construction Loan Agreement contained a provision concerning attorneys' fees and expenses resulting from Plaintiff's collection of the loan. The provision stated:

> Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

(Doc. # 446, Ex. 1.)

On March 2, 2007, then United States District Chief Judge Edward W. Nottingham granted Plaintiff's Motion for Summary Judgment (Doc. # 106) on its claims

---

[2] On July 11, 2005, the Hubbells filed a Third-Party Complaint against Carney Brothers Construction, Ian Carney, Richard Carney, Teamcorp, Inc. d/b/a Draft Tek, Thane R. Lincicome, and T.J. Concrete Construction, Inc. (Doc. # 25.) The Third-Party Complaint asserts claims of negligence, negligent misrepresentation, "alter ego/piercing the corporate veil," and unjust enrichment, against all Third-Party Defendants and individual claims of breach of contract against Carney Brothers Construction and Draft-Tek. The claims arise from Third-Party Defendants' allegedly fraudulent, improper, and/or inadequate practices relating to the planning, design, and construction of a single family home.

and the Hubbell's counterclaims (the "Summary Judgment Order").[3] (Doc. # 292.) Further, in pertinent part, Judge Nottingham ordered that "Plaintiff may have attorneys' fees by a separate proceedings [sic] pursuant to Rule 54 and Local Rule 54.1." (Doc. # 292 at 36.) Accordingly, on March 16, 2007, Plaintiff filed its first Motion for Attorneys' Fees (Doc. # 295), which Judge Nottingham granted on November 27, 2007. (Doc. # 353.)

During the pendency of Plaintiff's first Motion for Attorneys' Fees, Plaintiff filed an "Unopposed Motion for F.R.C.P. Rule 54(b) Certification" in connection with the Summary Judgment Order. (Doc. # 317.) On November 9, 2007, Judge Nottingham entered a Judgment Pursuant to Rule 54(b) against the Hubbells in the amount of $786,998.38 (the Promissory Note's outstanding principal), plus previously accrued interest ($128,805.07), future interest, and an outstanding late fee. (Doc. # 349.) The November 9, 2007 Judgment also includes costs and attorneys' fees.

The Hubbells appealed the Summary Judgment Order and moved to supplement the record on appeal. On December 31, 2008, the Tenth Circuit denied the Hubbells' Motion to Supplement the Record and affirmed the Summary Judgment Order (the "Order Affirming Summary Judgment"). (Doc. # 420 at 35.) Subsequently, Plaintiff moved for an award of the attorneys' fees and costs it incurred on appeal; the Tenth

---

[3] On October 22, 2008, this case was reassigned to Judge Christine M. Arguello, upon her appointment to the bench. (Doc. # 418.)

Circuit granted the motion on February 3, 2008, awarding "costs in the amount of $44.00" and "reasonable attorney fees."  (Doc. # 446, Ex. 2.)

During the pendency of the appeal, the parties continued to prosecute other issues before the District Court, which caused Plaintiff to incur additional fees and costs. On November 19, 2007, the Hubbells filed a Motion to Stay Execution of Judgment Pursuant to Fed. R. Civ. P. 62. (Doc. # 350), for which Judge Nottingham held a one-day bench trial on March 19, 2008 (Doc. # 400).  On January 11, 2008, Third Party Defendants Teamcorp, Inc. and Kerry Karnan filed a Motion to Remand State Court. (Doc. # 373.)  On that same date, another Motion to Remand was filed by the remaining Third Party Defendants, Carney Brothers Construction, Ian Carney, and Richard Carney.  (Doc. # 374.)  In connection with the Motions to Remand, the parties conducted additional discovery, including two depositions, pertaining to the Hubbells' place of residence and the District Court's subject matter jurisdiction over this action. (Doc. # 411.)  On September 2, 2008, Judge Nottingham denied the Motions to Remand, finding that diversity jurisdiction existed both on November 10, 2004, the date Plaintiff filed the Complaint, and on July 11, 2005, the date the Hubbells' filed their Third-Party Complaint.  (Doc. # 416 at 6-11.)

On October 27, 2008, this Court issued an Order Granting Defendants/Third-Party Plaintiffs' Unopposed Motion for Leave to Post Cash Security in Lieu of a Surety Bond (the "October 27, 2008 Order").  (Doc. # 419.)  On December 31, 2008, Plaintiff filed a Motion for Civil Contempt, arising from the Hubbells' purported failure to comply

with the October 27, 2008 Order.  (Doc. # 421.)  On March 10, 2009, the Court denied Plaintiff's Motion for Civil Contempt.  (Doc. # 442.)  Though the Hubbells had neither posted a supersedeas bond nor deposited cash in lieu of the supersedeas bond, the Court noted that the October 27, 2008 Order did not prevent Plaintiff from executing on the November 9, 2007 Judgment.  (*Id.* at 2.)

On May 19, 2009, Plaintiff filed the instant Motion for Attorneys' Fees (and costs) incurred in defending the Hubbells' appeal and addressing the various motions and proceedings in the District Court, during the pendency of the appeal ("Plaintiff's Motion for Post-Judgment Fees and Costs").  (Doc. # 446.)  Plaintiff seeks $110,905.60 in attorneys' fees and $6,609.46 in costs.  (*Id.* at 3.)  In support of its Motion, Plaintiff tendered copies of invoice summaries and supporting affidavits from its two lead attorneys.  (*Id.*, Exs. 3-4.)

On June 2, 2009, the Hubbells filed their Response brief.  (Doc. # 450.)  The Hubbells contend that Plaintiff's requested fees are unreasonable, and Plaintiff's use of two law firms has resulted in a duplication of efforts.  (*Id.* at 2.)  Further, the Hubbells contend that the Promissory Note "does not require the Hubbells to reimburse [Plaintiff] for the fees of multiple law firms and timekeepers."  (*Id.*)  The Hubbells also object to Plaintiff's use of "'block' time entries" and "abundant redacting" and contend that such practices impede a reasonableness determination.  (*Id.* at 2-3.)  Further, the Hubbells contend that Plaintiff's fee request should be reduced to exclude fees incurred in connection with the Third Parties' Motions for Remand and Plaintiff's unsuccessful

Motion for Contempt.  (*Id.* at 3-4.)  Finally, the Hubbells state that they are "entitled" to a hearing regarding Plaintiff's fee request.  (*Id.* at 4-5.)  The Hubbells do not contest the reasonableness of Plaintiff's attorneys' hourly billable rates.

On June 26, 2009, Plaintiff filed its Reply.  (Doc. # 458.)  In pertinent part, Plaintiff states that "[t]here is nothing inherently unreasonable about a client having multiple attorneys" and its two firms "took charge of distinct matters."  (*Id.* at 2.)  Further, as Plaintiff duly notes, Judge Nottingham previously noted that the Promissory Note's language "clearly allows Plaintiff to utilize multiple **attorneys**."  (Doc. # 353 at 5, n.2) (emphasis in original).  Finally, Plaintiff contends that fees related to the Third-Parties' Motions to Remand and Plaintiff's Motion for Civil Contempt are warranted; the Third-Parties' Motions to Remand called into question the federal court's jurisdiction over the entire action and the November 9, 2007 Judgment's validity.  Further, the Motion for Civil Contempt was necessitated by the Hubbells' inequitable conduct.  (Doc. # 458 at 7-11.)

## II.  ANALYSIS

### A.  LEGAL STANDARD

As previously stated in Judge Nottingham's November 27, 2007 Order on Plaintiff's earlier application for attorneys' fees, Colorado law permits the recovery of reasonable attorneys' fees where provided for in contract.  *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. Ct. App. 2002).  An award of attorneys' fees is appropriate in an action to enforce a promissory note when fees are explicitly provided for in the note and

the fees are reasonable and were actually incurred. *Karg v. Mitchek*, 983 P.2d 21, 27 (Colo. Ct. App. 1998); *accord Stevens v. Liberty Loan Corp.*, 421 P.2d 732, 734 (Colo. 1966).

When evaluating such claims for attorneys' fees, the court must follow the three-step process set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). *See Pearson v. Ross G. Stephenson Assocs., Inc.*, No. 91-2179, 1992 WL 223809, at *2 (D. Kan. Aug. 18, 1992).

The first step in determining a fee award is to determine the number of hours reasonably spent by counsel for the prevailing party. *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996); *Ramos*, 713 F.2d at 553. Factors considered in a reasonable-ness determination include (a) the hours that would be properly billed to one's client in accordance with good "billing judgment," (b) time spent on specific tasks, and (c) duplication of efforts. *Malloy*, 73 F.3d at 1017-18; *Ramos*, 713 F.2d at 553-54. In exercising good billing judgment, "counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The district court is obligated to exclude "hours not 'reasonably expended' from the calculation." *Malloy*, 73 F.3d at 1018.

Second, the Court must determine a reasonable hourly rate of compensation, based on "what lawyers of comparable skill and experience [in the given practice area]

would charge for their time." *Ramos*, 713 F.2d at 555. "The party seeking the award has the burden of persuading the court that the hours expended and the rate sought are both reasonable." *LaSelle v. Public Serv. Co. of Colorado Severance Pay Plan*, 988 F. Supp. 1348, 1351 (D. Colo. 1997); *Malloy*, 73 F.3d at 1018. In the instant case, the Hubbells do not contest the reasonableness of Plaintiff's attorneys' hourly rates. Therefore, the Court concludes that the hourly rates are reasonable. *Rodriguez v. Zavaras*, 22 F. Supp. 2d 1196, 1201-02 (D. Colo. 1998) ("As defendants have not objected, [the Court will] deem those rates reasonable for services rendered . . .").

Third, the court multiplies the reasonable hourly rate by the number of hours reasonably expended to determine the "lodestar" amount. *LaSelle*, 988 F. Supp. at 1351; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

**B. REASONABLENESS OF HOURS EXPENDED**

"Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.* In the instant case, the Hubbells contest the number of hours claimed by Plaintiff's attorneys.

1.    Duplication of Efforts.

"The Tenth Circuit has declined to require an automatic reduction in hours to adjust for multiple representation, but has advised the district courts to give particular attention to the possibility of duplication." *Degrado v. Jefferson Pilot Fin. Ins. Co.*, No. 02-cv-1533, 2009 WL 1973501, at *7 (D. Colo. July 6, 2009) (citing *New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996); *Deboard v. Sunshine Mining and Refining Co.*, 208 F.3d 1228, 1244-45 (10th Cir. 2000); *Sinajini v. Bd. of Educ. of San Juan County Sch. Dist.*, 53 Fed. Appx. 31, 35 (10th Cir. 2002)).

In the instant case, the Hubbells point to Judge Nottingham's "substantial[  ] reduc[tion]" in connection with Plaintiff's earlier fee application, "due to the multiplicity of timekeepers and resulting overlap/duplication and inefficiency".  (Doc. # 450 at 3.) However, the Hubbells fail to accurately summarize Judge Nottingham's reductions, which were fact-specific and not rote reductions due to the involvement of multiple attorneys.  (*See* Doc. # 353 at 5-9.)  Plaintiff maintains that the attorneys' contributions were not duplicative and the division of labor was properly defined between Plaintiff's two lead attorneys, John M. Palmeri at Gordon & Rees LLP[4] and Walter N. Houghtaling at McConnell Siderius Fleischner Houghtaling & Craigmile, LLC.[5]  As stated in their

---

[4]   At some point between June and September 2007, Mr. Palmeri left his prior firm, White and Steele and joined Gordon & Rees.  Thus, several of the submitted invoices reflect Mr. Palmeri's time at White and Steele.  (Doc. # 446, Exs. 3, 3A.)

[5]   Mr. Palmeri was assisted by associates Heather Kelly and Lance Ream, and at least two support staff members.  Mr. Houghtaling was assisted by attorneys Robert W. Steinmetz,

affidavits, Mr. Palmeri took lead responsibility for oral argument before the Tenth Circuit and responding to Defendants' Motion for a Stay of Execution and Third-Party Defendants' Motions to Remand, and had shared responsibility for briefing issues on appeal.  (Doc. # 446-4, ¶ 4.)  Mr. Houghtaling took lead responsibility for defending against Defendants' counterclaims and affirmative defenses.  (Doc. # 446-10, ¶ 3.)

Upon review of the invoice summaries submitted by Plaintiffs' attorneys, the Court agrees that, for the most part, Plaintiff's attorneys did not duplicate efforts. However, in a few instances, a duplication of efforts is apparent from the invoices. The Court has identified the following instances of duplication:

| Firm/Attorney | Date of Service; Docket Cite | Description of Duplicated Services | Time Billed | Where Services Also Appear | Reduction of Time (from first-listed firm's invoice) |
|---|---|---|---|---|---|
| White & Steele/John Palmeri | 5/14/2007; Doc. #446-5 at 10 | Review and revise response to motion for reconsideration and motion for certification. | Part of 1.0 | McConnell Siderius invoice (Doc. #336-11 at 9), 5/13/2007 | 0.6 |
| White & Steele/Heather K. Kelly | 5/14/2007; Doc. #446-5 at 11 | Revising Motion for Rule 54(B) Certification and Response to Motion for Relief from Judgment | 0.8 | McConnell Siderius invoice (Doc. #446-11 at 10), 4/23/07 | 0.8 |
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/W. Houghtaling | 4/23/07; Doc. #446-11 at 9 | Work on Reply to Response regarding Motion for Attorney Fees | 1.6 | White & Steel invoice (Doc. #446-5 at 7), 4/24/07 | 1.6 |

Michael T. McConnell, and Michael Gagnon and support staff member, Matt Plimpton.
(Doc. # 446-10, ¶ 3.)  However, fees generated by Messrs. McConnell and Gagnon are not included in Plaintiff's fee application.

| | | | | | |
|---|---|---|---|---|---|
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/ W. Houghtaling | 2/14/08; Doc. #446-11 at 14 | Review draft [redacted] | 0.5 | Gordon & Rees (Doc. #446-7 at 2), 2/15/08 | 0.5 |
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/ W. Houghtaling | 5/1/2008; Doc. #446-11 at 16 | Work on potential revisions to draft of appellate brief | 2.1 | Gordon & Rees (Doc. #446-7 at 13). 5/1/08 and 5/2/08 | 2.1 |
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/ W. Houghtaling | 5/5/2008; Doc. #446-11 at 16 | Review draft of brief | 1.4 | Gordon & Rees (Doc. #446-7 at 13). 5/1/08 and 5/2/08. | 1.4 |
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/ W. Houghtaling | 5/6/2008; Doc. #446-11 at 16 | Review additional revisions to brief | 0.4 | Gordon & Rees (Doc. #446-7 at 13). 5/1/08 and 5/2/08. | 0.4 |
| McConnell Siderius Fleischner Houghtaling & Craigmile, LLC/ W. Houghtaling | 5/8/2008; Doc. #446-11 at 17 | Review proposed stipulations for pre-trial conference | 0.3 | Gordon & Rees (Doc. #446-7 at 15) 5/8/2008. | 0.3 |

**Total time deducted:**
**John Palmeri: 0.6 hour**
**Heather Kelly: 0.8 hour**
**Walter Houghtaling: 6.3 hours**

> 2. <u>A Further Reduction In Hours Is Appropriate In Accordance With Good Billing Judgment</u>.

The Court notes that a further reduction in hours billed is warranted, in accordance with good billing judgment. John M. Palmeri's associate, Heather K. Kelly, billed time for "Travel to and attend" some unidentified meeting or hearing (3.4 hours), and attending the oral argument at the Tenth Circuit (2.4 hours). (Doc. # 446-8 at 16.) However, the invoice summaries fail to indicate whether Ms. Kelly actually performed

any billable work on this matter while she was traveling or whether Ms. Kelly actively participated in the oral argument before the Tenth Circuit or the unidentified meeting or hearing. Clearly, billing a client, much less an adversary, for unproductive time spent waiting or time spent in mere attendance at a meeting or hearing is not good billing judgment. Accordingly, 5.8 hours will be subtracted from Ms. Kelly's total billable time.

Similarly, Mr. Palmeri billed 3.3 hours for "Attendance for oral argument in tenth circuit court of appeals." Likewise, Mr. Steinmetz at McDonnell Siderius billed 3.0 hours to "Attend oral argument before the Tenth Circuit court of appeals." (Doc. # 446-11 at 31.) The invoice summaries fail to identify how much of that time these attorneys actively spent on billable work for this matter, as opposed to waiting for this matter to be called by the Tenth Circuit. Accordingly, the Court will subtract 1.65 hours from Mr. Palmeri's total billable time and 1.5 hours from Mr. Steinmetz's time.

Additionally, the Court has identified a line-item in the amount of $61.79 arising, in part, from a delivery service's thirty minutes of waiting time. (*See* Doc. # 446-9 at 5.) As with unproductive attorney time, billing clients or an adversary, for costs arising from a delivery service's waiting time is not good billing judgment. Therefore, in the Court's view, a 25% reduction ($15.45) is warranted.

3.    Reduction for Time Spent on Plaintiff's Motion for Civil Contempt.

The Court agrees that the fees and costs incurred in connection with Plaintiff's Motion for Civil Contempt should be deducted from Plaintiff's fee request. As noted in the Court's Order Denying Motion for Civil Contempt, "nothing in the Court's Order

[Granting Defendants/Third-Party Plaintiffs' Unopposed Motion for Leave to Post Cash Security in lieu of a Surety Bond] prevented Plaintiff from executing on the judgment." (Doc. # 442 at 2.)  Therefore, the Motion for Civil Contempt was unnecessary.  The Court has identified the following time entries that appear related to Motion for Civil Contempt:

| Attorney | Date; Docket Cite | Description of Service | Time Billed |
|---|---|---|---|
| Heather Kelly | 12/18/08; Doc. #446-9 at 2 | Legal research regarding [redacted][6] | 2.6 |
| Heather Kelly | 12/19/08; *Id.* | Legal research regarding [redacted] | 1.3 |
| Heather Kelly | 12/19/08; *Id.* | Legal research regarding [redacted] | 3.4 |
| Heather Kelly | 12/20/08; *Id.* | Drafting Motion for Contempt, analysis section incorporating legal research regarding [redacted] | 3.6 |
| Heather Kelly | 12/20/08; *Id.* | Drafting Motion for Contempt, factual background | 1.2 |
| Heather Kelly | 12/20/08; *Id.* | Drafting Motion for Contempt, introduction and conclusion | 0.6 |
| Heather Kelly | 12/29/08; *Id.* | Revise Motion for Contempt per [redacted] | 1.1 |
| Heather Kelly | 12/31/08; *Id.* | Revise motion for Contempt, incorporating [redacted] | 0.8 |

---

[6]   Though the description has been redacted, the Court presumes this research is related to the Motion for Civil Contempt, as that was the only motion filed during December 2008.  *See* CM/ECF docket.

| Heather Kelly | 1/21/09; *Id.* at 9. | Review and finalize Motion for Civil Contempt[7] | 0.8 |
|---|---|---|---|
| Heather Kelly | 2/16/09; *Id.* at 14. | Receipt and review of Response to Motion for Civil Contempt | 0.3 |
| Heather Kelly | 2/16/09; *Id.* | Draft Reply N. [sic] Support of Motion for Civil Contempt incorporating legal research | 1.9 |
| Heather Kelly | 2/16/09; *Id.* | Legal research regarding [redacted] | 0.8 |
| John Palmeri | 12/22/08; *Id.* at 3. | Review and revise motion for contempt | 0.1 |
| John Palmeri | 12/31/08; *Id.* | Review and revise motion for contempt | 0.1 |
| John Palmeri | 1/20/09; *Id.* at 9. | Telephone call from Mr. Fowler regarding response to motion for contempt and possible settlement | 0.1 |
| John Palmeri | 2/3/09; *Id.* at 14. | Receive and review response to motion for contempt | 0.4 |
| John Palmeri | 2/17/09; *Id.* | Review and revise reply in support of motion for contempt | 0.2 |

Accordingly, an additional 18.4 hours will be deducted from Ms. Kelly's billed hours and an additional 0.9 hours will be deducted from Mr. Palmeri's billed hours. Further, the Court will not award expenses in the amount of $485.25 from

---

[7] Because Plaintiff's Motion for Civil Contempt was filed on December 31, 2008 (Doc. # 421), the Court questions whether services for this time-entry were properly-identified.

"Computerized Legal Research" on January 14, 2009, as the entirety of that legal research was likely tied to Plaintiff's Motion to Compel. (Doc. # 446-9 at 16.)

## C.    REDACTIONS OF THE INVOICES AND BLOCK BILLING PRACTICES

The Hubbells contend that Plaintiff's attorneys' "block" time entries (*i.e.*, listing of more than one service under a particular time entry) and "abundant" redactions impede a reasonableness determination.

With respect to the redactions of the invoices, the Court notes that the types of redactions made are very similar to the redactions on the invoices submitted in support of Plaintiffs' first Motion for Attorneys' Fees (Doc. # 295, Ex. 2, Parts 1-4, Exs. 3A-3G)[8]. These redactions have been made to protect attorney-client privilege and attorney work product. At that time, the Hubbells also objected to Plaintiff's block billing but did not object to the redactions. However, Plaintiff's block billing practices and redactions did not factor into Judge Nottingham's November 27, 2007 award of attorneys' fees. (*See* Doc. # 353.)

Though the invoices submitted in support of Plaintiff's present motion appear to contain more redactions than the previous set of invoices, the Court concludes that the

___

[8]    Invoices submitted in support of Plaintiff's first Motion for Attorneys' Fees contained the following types of redactions: "Communicate with clients re [redacted], strategize re [redacted]," "work on analysis of claims re [redacted]" (Doc. # 295, Exs. 3A-3G), "Legal research of [redacted]", "review cases regarding [redacted]" (*Id.*, Ex.. 2, Part 1-4). Invoices submitted in support of the instant Motion contain the following types of redactions: "Conference regarding [redacted]", "Legal research regarding [redacted]", and "Revisions to Combined response per [redacted]" (Doc. # 446, Ex. 3A, Parts 1-5), "Communicate with [redacted]," "Meet with [redacted]," "Review, analyze and strategize with [redacted]," "Prepare for and attend conference with [redacted]," "Outline arguments [redacted]," "Prepare for [redacted]," and "Work on [redacted]" (*Id.* Ex, 4A).

15

most recent invoices contain more information protected by attorney-client privilege or concerning legal strategy than the previous set. The earlier invoices reflected time spent on discovery and reviewing pleadings. Accordingly, though the redactions necessitate greater scrutiny of Plaintiff's invoice summaries, the Court disagrees that they are unnecessarily abundant or inhibit its analysis of whether the fees are duplicative.

**D.    HOURS ASSOCIATED WITH THE THIRD PARTIES' MOTION FOR REMAND**

The Hubbells object to an award of fees associated with the Third Parties' Motion for Remand. (Doc. # 450 at 3.) In pertinent part, the Hubbells contend that they "took no position regarding this issue [of remand]. This issue was not raised by the Hubbells as either a claim or defense; therefore, [Plaintiff's] time spent considering and responding to this issue cannot reasonably be allocated to Hubbell and Hogan." (*Id.* at 3-4.)

The Court disagrees. The Motions to Remand called into question the Court's jurisdiction over this and the Third-Party actions. Moreover, a finding that the court lacks jurisdiction would vacate the November 9, 2007 Judgment. Plaintiff's Response to the Motions to Remand was an effort to preserve the Judgment, protect its interests, and exercise its rights to collect on the Promissory Note. Accordingly, the fees incurred in connection with Motions to Remand fall within those contemplated by the Promissory Note.

## E.  AWARD CALCULATION

Based on the foregoing, the Court calculates Plaintiff's fee and cost award as follows:

### 1.  Fees from White & Steele and Gordon & Rees

| Attorney | Reduction in Hours | Multiplied by Hourly Rate | Total Reduction |
|---|---|---|---|
| John Palmeri (at White & Steele) | 0.6 | $225 | $135 |
| Heather Kelly (at White & Steele) | 0.8 | $150 | $120 |
| John Palmeri (at Gordon & Rees)[9] | 2.55 | $265 | $675.75 |
| Heather Kelly (at Gordon & Rees) | 24.2 | $185 | $4,477 |
| **Total Fee Reduction** | | | **$5,407.75** |

Total Fee Award (White & Steele, Gordon & Rees):
$78,076.35 (total fees requested) - $5,407.75 (total reductions) = **$72,668.60**

Total Cost Award (Gordon & Rees):
$6,609.46-$15.45[10]-$485.25[11] = **$6,108.76**

### 2.  Fees from McConnell Siderius Fleischner Houghtaling & Craigmile, LLC

| Attorney | Reduction in Hours | Multiplied by Hourly Rate | Total Reduction |
|---|---|---|---|
| Walter Houghtaling | 6.3 | $150 | $945 |
| Robert Steinmetz | 1.5 | $130 | $195 |
| **Total Fee Reduction** | | | **$1,140** |

---

[9]  The first Gordon & Rees invoice is dated October 15, 2007 and includes services rendered during September 2007.  (Doc. # 446-5 at 14.)

[10]  Costs related to delivery service's wait time.

[11]  Costs related to Motion for Civil Contempt legal research.

<u>Total Fee Award (McConnell Siderius Fleischner Houghtaling & Craigmile, LLC)</u>
$31,152.25 (total fees requested) - $1,140 (total reductions) = **$30,012.25**

---

**Total Combined Fee & Cost Award:** $72,668.60 + $6,108.76 + $30,012.25 = **<u>$108,789.61</u>**

---

**F.     REQUEST FOR A HEARING REGARDING PLAINTIFF'S FEE APPLICATION**

The Hubbells contend that, under Colorado law, they are entitled to a hearing in connection with Plaintiff's fee application. However, the Court finds that Plaintiff's Motion for Attorneys' Fees is adequately briefed and supported by detailed invoice summaries, and oral argument would not materially assist the Court in its resolution. *See Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995); *TMJ Implants, Inc. v. Aetna, Inc.*, No. 05-cv-783, 2006 WL 521808, at *1 (D. Colo. March 2, 2006); *see also* 10 MOORE'S FEDERAL PRACTICE, § 54.157[3] at 54-257, 258 (Matthew Bender 3d ed. 2009) ("A hearing is required only when a substantial factual dispute is presented on an issue that the court cannot resolve based on the evidentiary submissions or on its own knowledge of the case.").

### III.  PLAINTIFF'S MOTION TO REDUCE AMOUNT OF JUDGMENTS OUTSTANDING PURSUANT TO FORECLOSURE SALE TO BANK (Doc. # 465)

On October 9, 2009, the Hubbells filed the instant Motion to Reduce Amount of Judgments Outstanding Pursuant to Foreclosure Sale to Bank. (Doc. # 465.) In pertinent part, the Hubbells ask the Court to reduce the deficiency on the unsatisfied November 9, 2007 Judgment by the amount of $885,000, the value of the Hubbells' property (the "Property"), as previously determined at a May 19, 2008 bench trial.

18

Plaintiff filed a Response on November 2, 2009. (Doc. # 470.)[12] Plaintiff

contends that the November 9, 2007 Judgment should be reduced by $585,000,

the amount of Plaintiff's successful bid at the foreclosure sale. (Doc. # 470 at 9.)

Though the Court granted the Hubbells' "Fourth Unopposed Motion for Extension

of Time to File Reply in Support of Motion . . ." up to and including January 28, 2010,

the Hubbells filed no Reply. (*See* Doc. ## 489, 490.) For the following reasons,

Defendant's Motion is granted in part and denied in part.

Following the Tenth Circuit's Order Affirming Summary Judgment, a foreclosure

sale of the Property occurred on September 30, 2009, at which Plaintiff bid the sum of

$585,000.00. (Doc. # 465, Ex. C.) The Hubbells contend that Plaintiff's bid "was not

made in good faith and did not represent the property's fair market value." (Doc. # 465

at 5.) In support, the Hubbells point to Judge Nottingham's prior determination, upon

the conclusion of a one-day bench trial, on May 19, 2008, that the Property was valued

at $885,000. (Doc. # 400.) Further, the Hubbells improperly assert that, "The Court's

prior determination of value in May 2008 is not only the law of the case, but is also

highly relevant evidence regarding the fair market value of the [P]roperty in September

2009." (Doc. # 465 at 5.) Finally, the Hubbells posit that, "unless [Plaintiff] has

evidence to warrant a $300,000 reduction in the fair market value of the property

between May 2008 and September 2009, the Court should find that [Plaintiff's] bid was

---

[12] In its Response, Plaintiff has incorporated its Motion for Civil Contempt (Doc. # 421), which the Court denied on March 10, 2009. (Doc. # 442.) Because the Court's Local Rules forbid the incorporation of motions in responses, Plaintiff's apparent attempt to renew its Motion for Civil Contempt (Doc. # 421) is DENIED. *See* D.C.Colo.LCivR 7.1(C).

not made in good faith and did not represent the property's fair market value." (*Id.*)

However, as discussed below, Plaintiff does not bear the burden of proof.

## A.    ANALYSIS

The Court has authority under Fed.R.Civ.P. 60(b)(5) to modify the November 9,

2007 Judgment.  Pursuant to Rule 60(b)(5), a court "may relieve a party or its legal

representative from a final judgment, order, or proceeding" if "the judgment has been

satisfied, released or discharged; it is based on an earlier judgment that has been

reversed or vacated; or applying it prospectively is no longer equitable[.]" "This standard

is based on the historic power of a court of equity to modify its decree in light of

changed circumstances." *Zimmerman v. Quinn*, 744 F.2d 81, 82 (10th Cir. 1984).

Colorado law sets forth a good faith requirement for debt-holders' foreclosure

bids on property subject to the debt.

> The holder of the evidence of debt or the attorney for the holder shall bid
> at least the holder's good faith estimate of the fair market value of the
> property being sold, less the amount of unpaid real property taxes . . . and
> less the estimated reasonable costs and expenses of holding, marketing,
> and selling the property, net of income received.

COLO. REV. STAT. § 38-38-106(6).  "Generally, that price for which the property sold at

the foreclosure sale is the conclusive measure of the deficiency." *Nat'l Can. Corp. v.*

*Dikeou*, 868 P.2d 1131, 1134 (Colo. App. 1993).  "That deficiency is conclusive unless

the defendant pleads and proves that the sale was not conducted in a strictly fair

manner." *Id.*  The defaulting party bears the burden to establish that the foreclosure

sale was unfair because the foreclosing party did not meet the good faith requirement.

*Gale v. Rice*, 636 P.2d 1280, 1282 (Colo. App. 1981) (burden was on the defendant to show that the "plaintiff's actions were deliberately undertaken to subject him to a large deficiency").

Appraisals obtained at or near the time of a foreclosure sale represent a good faith estimate of fair market value. *See*, *e.g.*, *Nat'l Can. Corp. v. Dikeou*, 868 P.2d 1131, 1138-39 (Colo. App. 1993) (affirming jury's deficiency determination, which was aligned with the then-most recent bids, rather than earlier, higher appraisals); *Chew v. Acacia Mut. Life Ins. Co.*, 437 P.2d 339, 341-44 (Colo. 1968) (remanding case upon finding that bid price was made in bad faith and with instructions that lower court conduct a new foreclosure sale after receipt of additional, updated appraisals).

Based on the foregoing, the Court finds that the Hubbells have failed to prove that Plaintiff bid in bad faith to subject the Hubbells to a large deficiency. While the Hubbells contend that Judge Nottingham's prior property valuation is the "law of the case" and "highly relevant", such contentions are not supported by the case law and fail to account for changing market conditions. Indeed, the foreclosure sale occurred on September 30, 2009, one year and four months *after* Judge Nottingham's property valuation, and at the time of plummeting real estate values.

Further, contrary to the Hubbells' contention, this Court does not deem Judge Nottingham's May 19, 2008 property valuation a holding on a rule of law. The law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v.*

*California*, 460 U.S. 605 (1983). While some courts construe the law of the case doctrine as applying to both findings of fact and conclusions of law, the Tenth Circuit has explicitly declined to "address under what circumstances findings of fact become the law of the case." *United States v. Monsisvais*, 946 F.2d 114, 115, n.2 (10th Cir. 1991). However, at least one court within the Tenth Circuit has held that "factual findings, like legal determinations *can* establish the law of the case." *FDIC v. Schuchmann*, 224 F. Supp. 2d 1332, 1340 (D.N.M. 2002) (emphasis added). Nevertheless, this Court declines to extend the *Schuchmann* holding to the instant case. Applying the law of the case doctrine to Judge Nottingham's property valuation would render irrelevant well-established precedent for ascertaining the good faith nature of foreclosure bids at the time of the foreclosure sale. Therefore, in light of changed circumstances, namely the foreclosure sale of the Property, which underlies the Hubbells' debt, the Court will reduce the unsatisfied November 9, 2007 Judgment by the amount of the foreclosure sale, $585,000.

Accordingly, for the foregoing reasons, IT IS ORDERED THAT Plaintiff's Motion for Attorneys' Fees (Doc. # 446) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED THAT Plaintiff shall be awarded fees in the amount of **$102,680.85** and costs in the amount of **$6,108.76** in connection with Plaintiff's Motion for Attorneys' Fees (Doc. # 446).

IT IS FURTHER ORDERED THAT Defendants Platt T. Hubbell and Kelley S. Hubbell's Motion to Reduce Amount of Judgments Outstanding Pursuant to Foreclosure Sale to Bank (Doc. # 465) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED THAT the November 9, 2007 Judgment (Doc. # 349) be reduced by $585,000.

DATED:  March 24, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge