IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 05-cv-00026-CMA-KLM

PLATT T. HUBBELL, and
KELLEY S. HUBBELL,

    Third-Party Plaintiffs,

v.

CARNEY BROTHERS CONSTRUCTION, a Colorado corporation,
IAN CARNEY,
RICHARD CARNEY,
TEAMCORP, INC. d/b/a DRAFT TEK, a Colorado corporation,
T.J. CONCRETE CONSTRUCTION, INC., a Colorado corporation, and
KERRY M. KARNAN,

    Third-Party Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT REGARDING RECOVERABLE DAMAGES (## 511, 512)**

This matter is before the Court on Third-Party Defendants Teamcorp, Inc. d/b/a Draft-Tek ("Teamcorp") and Kerry Karnan's ("Karnan") Motion for Partial Summary Judgment Regarding Plaintiffs' Recoverable Damages (Doc. # 511) and Third-Party Defendant T.J. Concrete Construction, Inc.'s ("TJ") Motion for Partial Summary Judgment Regarding Plaintiffs' Recoverable Damages (Doc. # 512). (Teamcorp, Karnan, and TJ will be collectively referred to as "Defendants.") For the following reasons, Defendants' motions are granted in part and denied in part.

## I. BACKGROUND

**A.   FACTUAL BACKGROUND**

The lengthy litigious history surrounding this construction defect case will not be repeated here but is set forth in the Court's orders of August 10, 2006 (Doc. # 227) and March 2, 2007 (Doc. # 292) and *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009). In addition, the following facts are undisputed unless otherwise noted. (Doc. ## 511, 512, 532.)

Third-party Plaintiffs Platt T. Hubbell and Kelly S. Hubbell[1] ("Hubbells") entered into an agreement with Teamcorp for design and drafting services relating to the construction of a residence. T.J. Concrete began the construction and poured the foundation in May 2003. (Doc. # 227, Order.) The Hubbells claim the wrongful conduct of the Defendants resulted in the residence being constructed in a defective manner.[2]

Approximately $786,999.38 of the funds the Hubbells borrowed from Alpine Bank, the original plaintiff in this action, were expended on the design and construction of the residence. The Hubbells ultimately defaulted on the loan, which led to the filing of the instant lawsuit as a foreclosure action. Alpine Bank foreclosed on the property and purchased it for $585,000 at a sheriff's sale on September 30, 2009. Accordingly, the Hubbells no longer own the property.

---

[1]   Kelley S. Hubbell is now known as Kelley S. Hogan.

[2]   Karnan is being sued in his capacity as an officer of Teamcorp for his involvement in the services Teamcorp rendered on the construction project.

The Hubbells and Alpine Bank then entered into a settlement agreement and release in early 2010 with respect to Alpine Bank's claims against the Hubbells. On June 29, 2010, the Hubbells and Alpine Bank filed a Stipulated Motion for Relief Under Rule 60(b)(5) Due to Satisfaction of Bank Judgments. This motion stated that all amounts awarded in favor of Alpine Bank and against the Hubbells are fully satisfied and noted that Alpine Bank shall cease any and all collection efforts against the Hubbells. The Court approved the motion June 30, 2010. Thus, as of June 30, 2010, the Hubbells were no longer indebted to Alpine Bank and all judgments against the Hubbells and in favor of Alpine Bank were fully satisfied.

Also in early 2010, the Hubbells entered into a settlement agreement and release with Third-party Defendants Carney Brothers Construction, Ian Carney and Richard Carney ("Carney Defendants") concerning the various claims the Hubbells brought against them. On August 27, 2010, the Hubbells and the Carney Defendants filed an Amended Stipulation with the Court stating that the Hubbells' agreed to voluntarily dismiss without prejudice all other claims against the Carney Defendants in exchange for a judgment in favor of the Hubbells and against the Carney Defendants in the amount of $1,952,500.00 on the negligence and negligence per se claims against the Carney Defendants. The Court approved the stipulation and dismissal on September 1, 2010 and entered judgment on September 2, 2010.

**B.     THE INSTANT MOTIONS**

Defendants move for partial summary judgment seeking to limit the Hubbells' damages to the amount the property diminished in value as a result of Defendants' actions. (Doc. # 511.) Defendants also move to cap this amount, pursuant to the Colorado Construction Defect Action Reform Act ("CDARA"), to the lesser of the fair market value, the replacement cost, or the cost of repair plus relocation costs and other direct economic costs related to loss of use, if any. Additionally, TJ moves for partial summary judgment asserting that the Hubbells are not entitled to damages for the loss of use of the property because any such loss was a result of the Hubbells' default on their Promissory Note and not Defendants' conduct. (Doc. # 512.)

The Hubbells oppose Defendants' motions, asserting two primary arguments: (1) the foreclosure and sale of the property did not retroactively remove the Hubbells' right to recover repair-cost damages, and (2) CDARA controls the proper measure of damages and nothing in the statute permits the recovery of diminished market value damages. (Doc. # 532 at 2.) The Hubbells responded to Teamcorp and Karnan's statement of facts; however, they failed to respond to TJ's.

On June 18, 2010, Defendants' filed a joint reply. (Doc. # 542.)

After the motions were fully briefed, the Hubbells settled with Alpine Bank and the Carney Defendants as described above. The Court therefore permitted supplemental briefing to address the effect, if any, these settlements have on the amount of damages recoverable by the Hubbells. (Doc. # 569, Minute Entry.)

In their joint supplemental brief, Defendants contend that, as a result of the settlements, the Hubbells have not suffered any recoverable damages. (Doc. # 575.) Defendants also reiterate their prior argument that the Hubbells are not entitled to repair costs because they no longer own the property. (*Id.* at 4.)

The Hubbells' supplemental response rehashed prior arguments, but also made new arguments regarding the statutory interpretation of CDARA. In addition, the Hubbells addressed, for the first time, TJ's arguments regarding loss of use, and refuted that the recent settlements were dispositive on the issue of damages. (Doc. # 576 at 5-11.) With respect to the effect of the settlements, the Hubbells proffered an additional 11 statements of fact with supporting evidence.

Defendants filed their joint supplemental reply on October 26, 2010. (Doc. # 577.) Yet Defendants failed entirely to respond to the Hubbells' two arguments regarding the irrelevance of the recent settlements and the corresponding statement of facts, instead spending the entire reply addressing the issues which were the subject of the initial briefing. The Defendants' motions are now fully briefed.

**C.    THE PARTIES' VIOLATIONS OF THE COURT'S RULES AND INSTRUCTIONS**

As described above and despite prior admonishments from the Court, the parties continue to ignore the Court's procedural rules by failing to properly respond to the other parties' asserted statements of fact. *See Alpine Bank v. Hubbell,* 506 F.Supp.2d 388, 394 (D. Colo. 2007). In addition, the parties used the Court's willingness to permit additional briefing on a narrow issue to regurgitate arguments already briefed, thereby

further taxing the resources of this Court. Accordingly, the Court will only consider arguments and evidence in the supplemental briefing which are directed to the narrow issue of the Hubbells' settlements. Any further unwarranted disregard of the Court's instructions or rules by any party may result in sanctions.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. v. Sec. Litig.*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(e). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

The parties' briefs raise four issues: (1) whether the CDARA permits damages measured by the diminution in value of the property, (2) if so, whether such damages

are the proper measurement of damages in this case, (3) whether loss of use damages are appropriate in this case, and (4) whether the Hubbells have already been fully compensated by their settlements with the other parties.

**A.    COLORADO CONSTRUCTION DEFECT ACTION REFORM ACT ("CDARA")**

The parties to the instant motion agree that the CDARA governs damages in this case. Defendants claim the proper measurement of damages is the diminution in value of the property caused by the alleged defect ("DMV"). The Hubbells disagree, contending that the CDARA does not allow for such a measurement. Therefore, the first issue the Court must determine is whether the CDARA allows for DMV damages in a construction defect case.

In a section entitled "Limitation of Damages," the CDARA provides:

> A construction professional otherwise liable shall not be liable for **more than** actual damages . . . .

Colo. Rev. Stat. § 13-20-806(1) (emphasis added). The statute defines "actual damages" as:

> [T]he fair market value of the real property without the alleged construction defect, the replacement cost of the real property, or the reasonable cost to repair the alleged construction defect, whichever is less, together with relocation costs, and, with respect to residential property, other direct economic costs related to loss of use, if any, interest as provided by law, and such costs of suit and reasonable attorney fees as may be awardable pursuant to contract or applicable law.

Colo. Rev. Stat. § 13-20-802.5(2).

The Hubbells interpret this statute as a mandate that damages in a construction defect case be based on one of the three measurements described: (1) the fair market

value of the real property without the alleged construction defect, (2) the replacement cost of the real property, or (3) the reasonable cost to repair the alleged construction defect. Defendants counter that the statute simply sets a cap on damages, and thus, other measurements are permissible as long as they are limited to the lesser of the three identified measurements.

The Court agrees with Defendants. First, it appears to be well-settled at Colorado common law that DMV is a proper measurement of damages in real property cases. The Colorado Supreme Court discussed DMV damages at length in *Board of County Comm'rs. of County of Weld v. Slovek*, 723 P.2d 1309, 1315-1316, 1317 (Colo. 1986) (*en banc*), a case involving injury to property. In *Slovek*, one party asserted that DMV is the **only** possible measurement of damages. The court rejected this and instructed:

> We conclude . . . that the considerations governing what is an "appropriate case" for departure from the market value standard [*i.e.*, DMV] are not susceptible to reduction to a set list and that no formula can be devised that will produce litmus-test certainty and yet retain the flexibility to produce fair results in all cases . . . . We prefer to leave the selection of the appropriate measure of damages in each case to the discretion of the trial court . . . . The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, *see Zwick v. Simpson,* 193 Colo. at 38, 572 P.2d at 134, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant or encourage economically wasteful remedial expenditures by the plaintiff.
>
> \* \* \*
>
> In summary, we conclude that the selection of the proper measure of damages in tort for injury to real property requires the exercise of informed discretion by the trial court and that no single measure of damages and no

>arbitrary limit on the amount permissible can be applied to limit the exercise of that discretion.

*Id.* at 1315-1316, 1317; *see also Fed. Ins. Co. v. Ferrellgas, Inc.*, 961 P.2d 511, 513 (Colo. Ct. App. 1997).  Thus, *Slovek* indicates that DMV is viewed as the standard measurement, and other measurements are used when DMV is not sufficient to fully compensate for the injuries.

Second, nothing in the language of the CDARA is exclusionary of other damages measurements, including the DMV.  The only apparent inconsistency between the common law set forth in *Slovek* and the statute relates to whether a cap on damages is appropriate.  *Slovek* states that "no arbitrary limit on the amount permissible can be applied to limit the exercise of that discretion" (*Slovek*, 723 P.2d at 1317), while the subsequently enacted CDARA clearly limits the amount of recoverable damages.  Accordingly, the Court finds that DMV is a permissible measurement for damages in this case.

**B.    DIMINUTION IN MARKET VALUE DAMAGES**

Having determined that DMV is a permissible measurement of damages, the Court must now determine whether it is the proper measurement in this case.  The parties do not dispute that the Hubbells no longer own the property as a result of the foreclosure sale.  The Hubbells contend, however, that ownership of the property is immaterial, and because their right to damages vested prior to the foreclosure sale, they are entitled to recover repair costs.  (Doc. # 532 at 2.)  The Hubbells rely on *Godwin-*

*Bevers Co., Inc. v. G.P. Enter., Inc.*, 502 P.2d 1124 (Colo. Ct. App. 1972) for this proposition.

Relying on the pre-*Slovek* case of *Zwick v. Simpson*, 572 P.2d 133 (Colo. 1977) (*en banc*), Defendants assert that the Hubbells are not entitled to repair damages and that the only proper measure is DMV damages.

For the following reasons, the Court agrees with Defendants that the Hubbells are entitled only to DMV damages. First, both *Slovek* and *Zwick* teach that damages ordinarily are DMV unless it is shown that another measure is more appropriate. The court in *Zwick* also identified specific examples of where repair or restoration costs may be warranted: "(1) where the property has no market value; or (2) where repairs have already been made; or (3) where the property is a recently acquired private residence and the plaintiff's interest is in having the property restored." *Zwick*, 572 P.2d at 134 (internal citations omitted). The court then went on to hold:

> Here, however, the plaintiff sold the property before the trial and it was apparent (1) that it had a market value and (2) that the plaintiff would not repair or replace the damaged parts of the realty. His actual loss, therefore, was and could only be the amount by which the market value of his property had diminished as a result of defendants' actions.

*Id*. at 134. Therefore, the sale of property can affect the nature of the recoverable damages. Second, the factors identified by the Colorado Supreme Court indicate that a deviation from DMV damages is not appropriate in this case. In this regard, the court identified the following nonexclusive factors to consider when determining whether another measure of damages is justified: (1) the nature of the owner's use of the

property, (2) whether the owner has a personal reason for having the property in its original condition, and (3) the nature of the injury, in particular whether the injury is reparable and at what cost. *Slovek*, 723 P.2d at 1315-16 (agreeing with factors set forth in RESTATEMENT (SECOND) OF TORTS § 929). The sale of property, either before or during litigation, is directly related to the first two factors. If a plaintiff sold the property, the plaintiff generally no longer has a use for the property or an interest in having it defect-free. Therefore, contrary to the Hubbells' assertion, the sale of the instant property is relevant and material and suggests that DMV is the proper measure of damages.

Third, the court specifically recognized that a plaintiff may benefit from a windfall if he accepts repair costs and then sells the property without making the repairs.

> Obviously, to the extent that a property owner is allowed to recover costs of restoration that are greater than the diminution in market value, there is the possibility that the owner will receive a monetary windfall by choosing not to restore the property and by selling it instead, profiting to the extent that restoration costs recovered exceed the diminution of market value . . . . These possibilities suggest the need for careful evaluation by the trial court to assure that any damages allowed in excess of [this measure] are truly and reasonably necessary to achieve the cardinal objective of making the plaintiff whole.

*Id.* at 1317. The same reasoning applies here. The Hubbells will experience a monetary windfall if they are awarded repair costs that exceed the DMV amount, because they no longer own the property. For this reason, the Court finds the Supreme Court's analysis in *Slovek* and *Zwick* more persuasive than the Colorado Court of Appeals' decision in *Godwin-Bevers*, even though *Slovek* and *Zwick* are not construction defect cases. The Court believes the proper measure of damages is

11

to compensate the Hubbells for their resulting injury, not to give them an unwarranted windfall.

In view of the foregoing, the Court finds that, as among the three measures of damages specified by Colo. Rev. Stat. § 13-20-806(1), DMV would provide the most appropriate measure in this case.[3]

## C.    LOSS OF USE DAMAGES

The next issue for the Court to consider is whether loss of use damages should be awarded together with DMV damages.  Unfortunately, neither party sufficiently briefed the issue.  However, the Hubbells claim that, in addition to DMV or repair and replacement costs, they suffered damages because they were unable to (1) complete construction of the residence by the anticipated completion date in July 2004, (2) use the residence following this date, and (3) obtain permanent financing to pay off the construction loan from Alpine Bank.  (Doc. # 576, Pls.' Suppl. Resp. at 2, 6, 10). As a further consequence of their inability to pay off the construction loan, they allegedly incurred substantial costs and attorneys fees in litigation with Alpine Bank and ultimately lost the property, and use of it, permanently.  (*Id.* at 6.)  To the extent the Hubbells introduce evidence in support of these claims of additional actual damages, the decision whether to award such damages is a matter for the jury to decide.

## D.    EFFECT OF THE HUBBELLS' SETTLEMENTS

---

[3] The Hubbells ask that, if the Court finds DMV is the appropriate measure, they be allowed to supplement the expert report of their appraiser. (Doc. # 576, Pl.'s Suppl. Reply at 14.)  The Court is inclined to grant such a request, but this request for relief should be brought as a separate motion and set forth sufficient good cause.

The last issue for the Court's consideration is the effect, if any, of the Hubbells' settlements with Alpine Bank and the other third-party defendants on the recoverable damages.

Defendants argue that, "under the terms of the settlement agreements entered into by the Hubbells with both Alpine Bank and the Carney Defendants, the discrepancy in value between what was owed by the Hubbells to Alpine Bank and what the property ultimately sold for through foreclosure, was paid by the Carney Defendants – not by Plaintiffs." (*Id.* at 4-5.) The Hubbells, therefore, allegedly have suffered no damages. Defendants' argument is based on the premise that the DMV in this case is measured as "the difference between the amount of the debt owed to the bank and the proceeds from the sheriff's sale of the property." (Doc. # 575, Defs.' Suppl. Brief at 4.)

The Hubbells refute that the settlements are relevant to the damages due them by Defendants. The Hubbells assert that the construction loan and resulting judgments do not represent the market value of the property because the Hubbells purchased the property with their own funds before obtaining the construction loan. (Doc. # 576, Pls.' Suppl. Resp. at 11-13.) To show this, the Hubbells set forth additional statements of fact with evidence. (*Id.* at 4-5.) The Hubbells also argue that Colorado law precludes the non-settling Defendants from receiving an offset for the amounts paid by the settling defendants. Defendants ignored these arguments and the additional statements of fact in their supplemental reply. (Doc. # 577, Defs.' Suppl. Reply.)

DMV damages are measured as the amount by which the market value of the property was diminished as a result of Defendants' actions. *Zwick*, 572 P.2d at 134. Therefore, the premise for Defendants' argument is appropriate only if they show the amount owed to the bank is equal to the fair market value of the property without the alleged defects. Defendants assume this fact instead of establishing it with evidence. On the other hand, the Hubbells have submitted sufficient evidence to demonstrate a genuine issue that the settlement does *not* accurately reflect the fair market value of the property without the construction defects. In particular, the Court notes that the evidence tends to show that they purchased the 14-acre property with their own funds prior to obtaining the construction loan from Alpine Bank. (*See* Doc. # 576-2, Pls.' Loan Application; Doc. # 576-4, May 19, 2008, Trial Transcript at 16:10-17:6.) As a result, the construction loan amount would not encompass the value of the land itself; rather, it would reflect only the cost of constructing the residence.

Furthermore, it appears to the Court that the Hubbells' settlements with Alpine Bank and the Carney Defendants are not relevant to the damage calculation as set forth in Colo. Rev. Stat. § 13-21-111.5, which requires only that the Jury make special findings as to the total amount of damages sustained by the Hubbells and the percentage of negligence or fault attributable to each remaining defendant and any appropriately designated person(s). The Court, therefore, denies Defendants summary judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED that Third-Party Defendants Teamcorp, Inc. d/b/a Draft-Tek and Kerry Karnan's Motion for Partial Summary Judgment Regarding Plaintiffs' Recoverable Damages (Doc. # 511) and Third-Party Defendant T.J. Concrete Construction, Inc.'s Motion for Partial Summary Judgment Regarding Plaintiffs' Recoverable Damages (Doc. # 512) are GRANTED in part and DENIED in part. The Court grants the summary judgment motions to the extent that the measure of damages recoverable in this case will be the amount the fair market value of the property was diminished as a result of Defendants' conduct, in addition to other actual damages permitted by law and as limited by the CDARA, Colo. Rev. Stat. § 13-20-806 and § 13-20-802.5(2). The Court DENIES the motions with respect to all other issues.

DATED: December  13 , 2010

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge